**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

**SOUTH ADAMS COUNTY WATER AND SANITATION DISTRICT,**

    **Plaintiff,**

v.

**CITY AND COUNTY OF DENVER**,

    **Defendant.**

---

**PLAINTIFF'S COMPLAINT**

---

Plaintiff South Adams County Water and Sanitation District, on behalf of its South Adams County Water and Sanitation District Activity Enterprise (the "District" or "Plaintiff"), by and through its undersigned counsel, brings this action against the City and County of Denver ("Denver" or "Defendant") to obtain monetary and declaratory relief, and alleges as follows:

### I.   NATURE OF ACTION

1. Denver has contaminated the District's water supplies with past and ongoing releases of chemicals known as per- and polyfluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS"). For decades, Denver has released significant quantities of aqueous film-forming foam ("AFFF") products containing PFAS—including PFOS, PFOA, other PFAS chemicals, and chemical precursors—into the soil, surface water and groundwater at its Roslyn Fire Training Facility located at 5440 Roslyn St., Denver, Colorado (the "Fire Training Facility"). Those chemicals have migrated—

and continue to migrate—downgradient, resulting in Denver's contamination of the District's raw water supplies with PFAS, including PFOA and PFOS.

2.      Upon the discovery of the PFAS contamination in 2018, the District took immediate and ongoing response actions to ensure its finished drinking water supplies are and remain safe for domestic use.  Additional response actions, including construction of an additional water treatment facility specifically designed to treat PFAS, will ensure that the District's drinking water meets federal and State standards and guidelines into the future.  The District successfully sought state and federal funding to defray the financial burden of the required response actions on its customers, but there remains a huge deficit between that funding and the District's necessary costs of response attributable to PFAS releases from Denver's Fire Training Facility.

3.      The District brings this action pursuant to section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, to recover its past and future response costs from Denver.

## II.   THE PARTIES

4.      The District is a special district established and governed under provisions of the State of Colorado Special District Act, Colo. Rev. Stat. §§ 32-1-101 to -1807 and organized to provide water and sanitation district services to the Commerce City, Colorado, area and nearby unincorporated areas of Adams County, Colorado.  The District's principal office is located at 6595 E. 70th Avenue, Commerce City, Colorado 80022.  In Colorado, special districts are quasi-municipal corporations and political subdivisions of the state.

5. Denver is a home-rule municipality and a municipal corporation of the State of Colorado under the Colorado Constitution, Article XX. Denver owns and operates the Fire Training Facility.

### III.   JURISDICTION AND VENUE

6. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b), because the District asserts claims arising under CERCLA.

7. Venue is proper in the United States District Court for the District of Colorado pursuant to 28 U.S.C. §1391(b)(2) and 42 U.S.C. § 9613(b) because the claims arose, and the releases of hazardous substances have occurred within, the District of Colorado.

8. Upon filing this Complaint, the District provided a copy of the Complaint to the Attorney General of the United States and to the Administrator of the U.S. Environmental Protection Agency ("EPA") as required by 42 U.S.C. § 9613(l).

### IV.   GENERAL ALLEGATIONS

**A.   Per- and Polyfluoroalkyl Substances**

9. PFAS are a class of so-called "forever chemicals" that persist in the environment indefinitely. These chemicals are synthetic and do not occur naturally in the environment. PFOA and PFOS are two specific types of PFAS chemicals.

10. According to EPA, certain PFAS, including PFOA and PFOS, may present a significant risk to human health and the environment even at low concentrations. EPA also has noted that these compounds bio-accumulate and bio-magnify in human and animal tissues, suggesting that low levels may build up in humans over time.

3

11. Some PFAS also are highly mobile in the environment, and when they enter the environment, they travel through soil and into surface water and groundwater.

12. Accordingly, EPA has undertaken several actions targeted at regulation of PFAS, including PFOA and PFOS. In 2016, under the federal Safe Drinking Water Act ("SDWA"), EPA set Health Advisory Levels ("HALs") for PFOA and PFOS at 70 parts per trillion ("ppt"), respectively (a HAL is a concentration of a chemical in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure). The Agency then drastically lowered the HALs in June 2022 to 0.004 ppt and 0.02 ppt, respectively. Since then, EPA has undertaken formal rulemakings, including promulgating a National Primary Drinking Water Regulation pursuant to the SDWA, which set Maximum Contaminant Levels ("MCLs") for PFOA and PFOS of 4.0 ppt, respectively. *See* 89 Fed. Reg. 32,532 (Apr. 26, 2024). EPA has also issued a final rule designating PFOA and PFOS as "hazardous substances" under CERCLA. *See* 89 Fed. Reg. 39,124 (May 8, 2024).

**B.    The District and Its Operations**

13. The District provides water supply and wastewater treatment services to a service area that encompasses Commerce City and approximately 28 square miles in Adams County, Colorado. Within that area, in 2025, the District delivered over 3,000,000,000 gallons of drinking water to approximately 75,000 people through over 24,000 connections.

14. As pertinent to this case, the District is responsible for supplying "water for domestic and other public and private purposes by any available means and provides all necessary or proper reservoirs, treatment works and facilities, equipment, and appurtenances incident thereto." Colo. Rev. Stat. § 32-1-103(25).

4

15. Pursuant to Colorado law, the District has authority to sue and to "exercise all rights and powers necessary or incidental to or implied from the specific powers granted to special districts." Colo. Rev. Stat. § 32-1-1001(1). The General Assembly views these powers as "necessary to secure the public health, safety, convenience, and welfare." Colo. Rev. Stat. § 32-1-113.

16. The District holds water rights in the alluvial aquifer tributary to the South Platte River as confirmed and awarded by various water court decrees. Pursuant to its water rights, the District withdraws water from its groundwater wells to supply its customers' water needs.

17. The District owns and operates a drinking water supply system that historically included eleven water supply wells that withdraw groundwater from three wellfields overlying an alluvial aquifer tributary to the South Platte River, and in particular, from a feature known as the Quebec Paleochannel, an ancient river channel of the South Platte River that now serves as a key subsurface conduit for groundwater flow (the "Drinking Water Wells"). The Drinking Water Wells generally are located south of East 96th Avenue and north of East 60th Avenue in Commerce City, and the three wellfields are depicted in the figure attached as Exhibit 1. The District's drinking water supply system includes eight deep groundwater wells that draw drinking water from the Arapahoe, Dawson-Arkose, and Laramie-Fox Hills Formations. The District also purchases treated water from Denver Water pursuant to a 1998 lease agreement to augment its domestic supplies.

18. The District owns and operates a drinking water treatment plant proximate to the Drinking Water Wells that historically has provided drinking water treatment services to the District's customers (the "Klein Treatment Plant"). The treatment plant is located at 7400 Quebec

St., Commerce City, CO 80022, and is depicted in Exhibit 1. The treatment plant was not designed or intended to treat PFAS.

### C. The District's Discovery of Contamination of its Drinking Water Wells with PFAS, including PFOA and PFOS.

19. In 2018, the District tested for PFAS, including PFOA and PFOS, in 24 raw water samples drawn from the District's Drinking Water Wells. The PFAS levels detected in the raw water samples ranged from 24 ppt to 2,280 ppt.

20. The District took immediate action to safeguard its drinking water as further described in Section E below.

21. The District also promptly communicated its discovery of the elevated PFAS concentrations to regulators at the Colorado Department of Public Health and Environment ("CDPHE"). The District worked with CDPHE, EPA, and local officials to coordinate on immediate response activities and public outreach.

22. Formal notice of the PFAS contamination and Denver's responsibility for the same was provided to Denver on September 19, 2018.

23. Pursuant to the ongoing monitoring program described in Paragraph 34, periodic testing conducted by the District confirms that PFAS chemicals are still present at high concentrations in its raw drinking water supplies. For example, in early November 2025, PFOA and PFOS concentrations in certain wells in the District's Central Wellfield were measured as high as 342.6 ppt PFOA and PFOS, combined.

D.  **Denver's Releases of PFAS, including PFOA and PFOS, from the Fire Training Facility.**

24. Since at least 1991, the Denver Fire Department has operated the Fire Training Facility, a firefighting training facility located in Denver approximately 1 mile south of the District's Southern Wellfield. The Fire Training Facility is owned by Denver.

25. For decades, Denver used AFFF products containing PFAS—including PFOS, PFOA, other PFAS chemicals, and their chemical precursors—in connection with various firefighting training activities at the Fire Training Facility.

26. For example, on information and belief, Denver would ignite a building located at the Fire Training Facility training pad known as the "Burn House" and direct firefighting trainees to extinguish the fire using these PFAS-containing firefighting foams.

27. Denver's use of AFFF at the Fire Training Facility and its failure to control the foam once deployed has resulted in extensive and ongoing releases of PFOA and PFOS into the environment at and from the Fire Training Facility.

28. The Fire Training Facility is hydraulically upgradient of the District's Drinking Water Wells. Groundwater beneath the Fire Training Facility and the PFAS, including PFOA and PFOS, migrates in the subsurface downgradient, including via the Quebec Paleochannel, to the District's Drinking Water Wells.

29. Denver has conducted sampling for PFAS at the Fire Training Facility site at various times since the District notified Denver of its claims related to the contamination. Through this sampling, Denver has detected PFAS compounds, including PFOA and PFOS, at high concentrations in soil and groundwater at and downgradient of the Fire Training Facility. For example, in March 2019, a Denver groundwater sample from a groundwater monitoring well

7

proximate to the facility's northern boundary had a PFOS concentration of 44,000 ppt. The PFOA concentration was 10,200 ppt. An August 2022 report documents PFOS concentrations in groundwater near the fire training pad and the unlined ditch to the north of the pad ranged from approximately 784 ppt to over 24,000 ppt. Additionally, PFOS was detected in groundwater beneath the unlined stormwater detention basin in the northwest corner of the Fire Training Facility property at concentrations exceeding 7,000 ppt.

30. Data collected by Denver in 2024 confirm ongoing high-concentration PFAS releases in groundwater beneath and downgradient of the Fire Training Facility. For example, PFOS concentrations in groundwater at the northern end of the site exceeded 6,600 ppt, and PFOS concentrations in groundwater near the eastern part of the site exceeded 20,000 ppt. PFOS concentrations in groundwater north and downgradient of the Fire Training Facility ranged as high as 2,870 ppt.

31. Denver has failed to eliminate or control releases of PFOA and PFOS at and from the Fire Training Facility, and those releases have contaminated and continue to contaminate the District's drinking water supplies.

**E.   The District Has Incurred, and Will Continue to Incur, Necessary Response Costs Due to Denver's Contamination of the District's Raw Drinking Water Supplies.**

32. Releases of PFOA and PFOS at and from the Fire Training Facility have caused the District to necessarily incur tens of millions of dollars in costs responding to Denver's contamination of its raw drinking water supplies.

33. In particular, when the contamination was discovered in 2018, the District immediately instituted a program at the Klein Treatment Plant to intensively treat withdrawn raw groundwater using granular activated carbon ("GAC") on an ongoing basis to remove PFAS and

8

ensure the water it delivers to its customers meets all regulatory standards and guidelines. The presence of high concentrations of PFAS contamination, including PFOA and PFOS, in the District's groundwater supplies also requires the District to conduct frequent and costly changeouts of GAC at the Klein Treatment Plant. The District has incurred, and will continue to incur, response costs associated with this intensive treatment program.

34. The District also had to significantly increase the amount of treated water it purchases from Denver Water to mix in with and further dilute and reduce PFAS concentrations, including PFOA and PFOS concentrations, in its finished drinking water supplies. The District has incurred, and may continue to incur, response costs associated with procuring this blending water from Denver Water. In addition, the District had to develop a rigorous and extensive water quality monitoring and testing program to ensure that PFAS concentrations in its blended finished water supplies are at acceptable levels. Relatedly, given the imperative for timely testing results and to reduce costs, the District had to procure in-house laboratory analytical capabilities. The District has incurred, and will continue to incur, response costs associated with installing, operating, and staffing its in-house laboratory's PFAS analytical capabilities.

35. The District also has incurred significant costs since 2018 for consulting and legal services related to: its response options and legal obligations, securing funding for response, property acquisition for the dedicated PFAS treatment facility and for other activities closely tied to and supporting the District's response to the releases from Denver's Fire Training Facility and the impacts to the District's raw drinking water supplies.

36. Due to the persistence of PFAS in the environment and Denver's failure to eliminate or control releases from its Fire Training Facility, the District must continue testing and

treating for PFAS, including PFOA and PFOS, in its raw drinking water supplies indefinitely into the future.

37. Due to the ongoing releases from the Fire Training Facility and the elevated PFAS concentrations in the District's raw drinking water supplies, continued intensive treatment of the District's raw drinking water supplies using GAC is infeasible and unsustainable. Due to limits on water availability and cost constraints, continued procurement of blending water from Denver Water indefinitely into the future is also infeasible and uncertain.

38. In light of the significant costs and operational challenges associated with treating the District's water supplies for PFOA and PFOS at the Klein Treatment Plant, the District evaluated alternative, long-term treatment PFAS strategies. . Based on factors including protectiveness, implementability, effectiveness, and cost, a dedicated ion exchange treatment facility for PFAS, including PFOA and PFOS, was identified as the preferred alternative for long-term treatment of Denver's PFAS contamination in the District's raw drinking water supplies.

39. The District is currently constructing a new dedicated PFAS treatment facility that will use ion exchange technology to treat PFAS, including PFOA and PFOS, in its raw drinking water supplies. Construction and operation of the District's new treatment facility is necessary to ensure that the District can continue providing drinking water to its customers that meets federal and State water quality standards and guidelines.

40. The District has incurred, and will continue to incur, significant necessary costs of response associated with the design and construction of the PFAS treatment facility. Once the new PFAS treatment facility is operational, the District will incur ongoing operating and maintenance costs, plus future capital costs for equipment replacement.

41. Since discovery of the problem in 2018, the District has been in regular communication with its customers and the public, issuing informational materials online and by mail and publicizing the availability of the District's water quality "hotline" so it could immediately respond to customer questions and concerns about the PFAS contamination and the District's response. Since 2018, the contamination has been a key topic at multiple regular and special meetings of the District's Board of Directors, resulting in key contractual commitments by the District in both February 2023 and March 2024 to jumpstart planning and construction of a dedicated PFAS treatment facility. All of these meetings are open to the public and include an opportunity for questions and comments from the public. The District also has coordinated closely with EPA and other federal agencies, CDPHE, and local officials in developing and implementing response actions, and held a public meeting in February 2023 to inform citizens and solicit public input on the District's needs and plans for a dedicated PFAS treatment facility and the environmental assessment for the project.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Cost Recovery under CERCLA § 107(a)

42. The District realleges and incorporates by reference the allegations in Paragraphs 1 through 41, as if fully set forth herein.

43. CERCLA section 107(a) authorizes cost-recovery actions by "any . . . person" to recover "necessary costs of response" incurred "consistent with the national contingency plan, plus interest," from any other entity that qualifies as a liable party under section 107(a)(1)-(4). 42 U.S.C. § 9607(a). To recover costs under CERCLA section 107, a plaintiff must show: (1) there has been a "release" or "threatened release" of a "hazardous substance"; (2) the site in question

11

qualifies as a "facility"; (3) the defendant is a "covered person" or "responsible person" as defined by the Act; (4) the release or threatened release has caused the plaintiff to incur costs; and (5) the costs incurred by the plaintiff are "necessary costs of response" that were incurred "consistent with the national contingency plan." 42 U.S.C. § 9607(a).

44. Denver is a "person" for purposes of CERCLA.  42 U.S.C. § 9601(21).

45. The District is a "person" for purposes of CERCLA.  42 U.S.C. § 9601(21).

46. Under CERCLA, "hazardous substances" include, among other things, "any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title." 42 U.S.C. § 9601(14).

47. PFOA and PFOS are "hazardous substances" under CERCLA.  40 C.F.R. § 302.4.

48. The Fire Training Facility is a "facility" for purposes of CERCLA because it is a "site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9).

49. Denver has released, and continues to release, PFOA and PFOS at and from the Fire Training Facility due to its use and disposal of PFAS-containing products at the Fire Training Facility.  42 U.S.C. § 9601(22).

50. Denver is a "covered person" because it owns and operates the Fire Training Facility and has owned and operated the Fire Training Facility at the time of disposal of PFOA and PFOS at the Fire Training Facility.  42 U.S.C. § 9607(a)(1) and (2).

51. The releases of PFOA and PFOS at the Fire Training Facility have caused the District to incur necessary costs of response.  42 U.S.C. §§ 9601(25), 9607(a)(4)(B).

52. The District has incurred tens of millions of dollars in response costs to date and will continue to incur further response costs.

53. The District has incurred, and will continue to incur, these costs consistent with the National Contingency Plan.

54. Pursuant to 42 U.S.C. § 9607(a)(4)(B), Denver is strictly and jointly and severally liable to the District for the response costs that the District has incurred and will continue to incur in responding to releases of PFOA and PFOS into the environment from Denver's Fire Training Facility.

55. As previously noted, the District notified Denver of its claims for recovery of its costs attributable to Denver's releases of PFOA and PFOS from the Fire Training Facility by letter dated September 19, 2018, and is entitled to prejudgment interest pursuant to 42 U.S.C. § 9607(a).

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment under CERCLA § 113(g)

56. The District realleges and incorporates by reference the allegations in Paragraphs 1 through 55, as if fully set forth herein.

57. Because the extent and magnitude of the contamination caused by releases of PFOA and PFOS from the Fire Training Facility are not yet fully known, and because the releases and impacts are ongoing, the District will incur further necessary response costs, including but not limited to additional investigatory and cleanup costs.

58. There is a present and actual controversy between the District and Denver concerning their respective rights and obligations with respect to the response costs, including future response costs, associated with the releases of hazardous substances at and from the Fire Training Facility.

59. Pursuant to 42 U.S.C. § 9613(g)(2), the District is entitled to a declaratory judgment establishing Denver's liability for response costs that the District will incur in the future.

## VI. DEMAND FOR RELIEF

WHEREFORE, the District demands judgment in its favor, and against Denver, plus the following additional relief:

A. Award the District its past response costs in an amount to be determined at trial;

B. Issue a declaration that Denver is responsible and liable for the District's future response costs, plus interest as allowed by law;

C. Award attorneys' fees that qualify as response costs under CERCLA;

D. Award other reasonable fees and costs, including expert witness fees, as permitted by law;

E. Award prejudgment and post-judgment interest at the highest allowable legal rates; and

F. Such other and further relief as the Court deems just and proper.

Dated: January 20, 2026                           DAVIS GRAHAM & STUBBS LLP

*/s/ Elizabeth H. Temkin*
Elizabeth H. Temkin
James R. Henderson
3400 Walnut Street, Suite 700
Denver, Colorado, 80205
Telephone: (303) 892-9400
Email: elizabeth.temkin@davisgraham.com
           jim.henderson@davisgraham.com